UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAZZERICK ANTOINE LONG,

        Petitioner,                   Civil No. 04-10326
                                              Honorable David M. Lawson

v.

TOM BELL,

        Respondent.
_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

The issue presented by the petition for writ of habeas corpus in this case is whether the Supreme Court's decision in *Halbert v. Michigan*, 545 U.S. 605 (2005), declaring unconstitutional Michigan's practice of denying counsel to plea-convicted indigent criminal defendants in their first-tier appeals should apply to the petitioner, who requested and was denied appellate counsel before *Halbert* was decided. The issue of the extent of *Halbert*'s application presently is under consideration by the Sixth Circuit in *en banc* review. This Court concludes that *Halbert* did not announce a new rule of law, and even if it did, the rule should be applied retroactively according to *Teague v. Lane*, 489 U.S. 288 (1989). Therefore, the Court will conditionally grant the petition for a writ of habeas corpus and direct the State of Michigan either to appoint counsel to assist the petitioner in his pursuit of leave to appeal his convictions or release him from custody.

I.

The facts of the case are not complicated. Petitioner Lazzerick Antoine Long was charged with armed robbery, first-degree home invasion, and two counts of possession of a firearm during the commission of a felony for his participation in a crime that occurred on January 8, 2003. On

January 17, 2003, he pleaded guilty to the armed robbery charge in the Berrien County, Michigan circuit court. In exchange for his guilty plea, the prosecutor dismissed the remaining charges. He was sentenced on February 10, 2003 to ten years, six months to twenty years imprisonment.

The petitioner states that he submitted a request for counsel to appeal his sentence immediately after sentencing by completing the "Concerning Right to Appeal after Plea of Guilty" form. He states that the request was never addressed. The petitioner next submitted another request for appointed appellate counsel on July 10, 2003. That request was denied in a letter from the Honorable Casper O. Grathwohl, the sentencing judge, on July 25, 2003. The petitioner filed yet another request for appointed appellate counsel on July 15, 2003, following the Sixth Circuit's decision in *Tesmer v. Granholm*, 333 F.3d 683 (6th Cir. 2003) (*en banc*) (holding that the Michigan statute denying appointed counsel for first-level applications of leave to appeal from plea-based conviction was unconstitutional). The trial court again denied appointment of counsel, this time in a formal order. *People v. Long*, No. 03-400146-FC (Berrien County Circuit Court Sept. 9, 2003).

On November 26, 2003, the petitioner filed a *pro se* application for leave to appeal in the Michigan Court of Appeals, raising the following claims: (1) the trial court incorrectly scored his offense variables and departed from the sentencing guidelines without complying with the departure requirements; and (2) the failure to appoint appellate counsel violated the United States Constitution. The Michigan Court of Appeals denied leave to appeal on February 11, 2004. *People v. Long*, No. 252388 (Mich. Ct. App. Feb. 11, 2004). The petitioner thereafter filed an application for leave to appeal in the Michigan Supreme Court raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal on May 28, 2004. *People v. Long*, 470 Mich. 868, 680 N.W.2d 898 (May 28, 2004) (Table).

Following the Michigan Supreme Court's decision, the petitioner filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 23, 2004 raising the same claims presented to the state courts. The petitioner presently is confined at the Gus Harrison Correctional Facility in Adrian, Michigan. The respondent has filed an answer to the petition, and the matter is now ready for decision.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's

application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

In 1994, the Michigan constitution was amended to provide that "an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court." Mich. Const., Art. 1, § 20. Thereafter, "several Michigan state judges began to deny appointed appellate counsel to indigents" convicted by plea. *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). The Michigan legislature codified this practice in 2000. Mich. Comp. Laws § 770.3a (West 2000). The Michigan Supreme Court upheld the practice of denying plea-convicted indigent defendants appointed counsel on appeal in *People v. Harris*, 470 Mich. 882, 882 (2004), and *People v. Bulger*, 462 Mich. 495, 511 (2000).

In 2002, the Sixth Circuit addressed the validity of section 770.3a in *Tesmer v. Granholm*, 295 F.3d 536 (6th Cir. 2002) (panel decision). Although the initial panel held that the statute was constitutional, that decision was overturned on rehearing *en banc*. *Tesmer v. Granholm*, 333 F.3d 683, 701 (6th Cir. 2003) (en banc). Thereafter, this Court held that *People v. Bulger*, which approved Michigan's practice of denying counsel on appeal to indigent plea-convicted defendants, was an unreasonable application of *Douglas v. California*, 372 U.S. 353 (1963), because Michigan's

practice as codified in the statute violated the Equal Protection Clause. *Bulger v. Curtis*, 328 F. Supp. 2d 692 (E.D. Mich. 2004).

Although the *en banc Tesmer* decision was reversed on procedural grounds, *Kowalski v. Tesmer*, 543 U.S. 125 (2004) (holding that the plaintiffs did not have standing to bring suit), the Supreme Court addressed the merits of Michigan's practice shortly thereafter in *Halbert v. Michigan*, 545 U.S. 605 (2005). Agreeing with the substance of the Sixth Circuit's *en banc Tesmer* decision, the Supreme Court held that the "Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." *Id.* at 610.

Based on *Halbert*, the petitioner argues that since he was denied appointed appellate counsel on his first-tier review, his rights under the Due Process and Equal Protection Clauses were violated. The respondent concedes that if *Halbert* is applied retroactively, the petitioner is entitled to habeas relief. However, the respondent argues that the *Halbert* decision does not apply retroactively to cases on habeas review.

The determination of the retroactivity of a Supreme Court decision is governed by *Teague v. Lane*, 489 U.S. 288 (1989), which, as the Court later explained, sets forth a three-step inquiry:

> First, the date on which the defendant's conviction became final is determined. *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997). Next, the habeas corpus court considers whether "'a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Ibid.*, (*quoting Saffle v. Parks*, 494 U.S. 484, 488 (1990)) (alterations in *Lambrix*). If not, then the rule is new. If the rule is determined to be new, the final step in the *Teague* analysis requires the court to determine whether the rule nonetheless falls within one of the two narrow exceptions to the *Teague* doctrine. . . . The first, limited exception is for new rules "forbidding criminal punishment of certain primary conduct [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989). The second,

even more circumscribed, exception permits retroactive application of "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Graham*, 506 U.S. 461, 478 (1993).

*O'Dell v. Netherland*, 521 U.S. 151, 156-57 (1997).

The first step of the inquiry is easily resolved in this case. State convictions are final "for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994). The petitioner's conviction became final on August 27, 2004, when the time for filing a timely petition for a writ of *certiorari* to the United States Supreme Court expired. The petitioner's conviction was final before *Halbert* was decided in 2005.

Next, the Court must assess whether the rule announced in *Halbert* was new or, on the other hand, "whether the rule later announced in [*Halbert*] was *dictated* by then-existing precedent." *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997) (emphasis in original). This Court already has determined that the failure to appoint counsel for a first-tier appeal to indigent plea-convicted state defendants was unconstitutional under precedent that pre-dated *Halbert*, and the state supreme court's contrary conclusion was an unreasonable application of *Douglas v. California*, 372 U.S. 353 (1963). *Bulger*, 328 F. Supp. 2d at 700-03. An examination of the Supreme Court's rationale in *Halbert* fortifies that decision.

In *Halbert*, the petitioner, who pleaded *nolo contendere* in state trial court to two counts of second-degree criminal sexual conduct, challenged in a federal habeas proceeding the state court's denial of his request as an indigent for appointed counsel on appeal. The petitioner argued that his application for leave to appeal to the Michigan Court of Appeals was a first-tier appellate proceeding

requiring appointment of counsel under *Douglas v. California*. The State argued that the appeal instead fell within the rule of *Ross v. Moffitt*, 417 U.S. 600 (1974), which held that a state need not appoint counsel to aid an indigent person in a discretionary appeal to the state's highest court.

The Supreme Court held that even though review by the Michigan Court of Appeals in a guilty plea case was discretionary, as was the appeal in *Ross*, the review provided by the Michigan Court of Appeals was analogous to that provided in *Douglas* rather than *Ross*. Important to the Court's holding were two aspects of the Michigan appellate process. First, "in determining how to dispose of an application for leave to appeal, Michigan's intermediate appellate court looks to the merits of the claims made in the application." *Halbert*, 545 U.S. at 617. The error-correction review provided by the Michigan Court of Appeals is identical to the review provided by the State in *Douglas*, and it is different from the review provided by the state supreme court in *Ross*, which did not "sit as an error-correction instance." *Id.* at 617-19. The Court reasoned that "[w]hether formally categorized as the decision of an appeal or the disposal of a leave application, the Court of Appeals' ruling on a plea-convicted defendant's claims provides the first, and likely the only, direct review the defendant's conviction and sentence will receive." *Id.* at 619.

The second factor that persuaded the Court that Michigan's scheme was governed by the rule in *Douglas* is that indigent defendants pursuing first-tier review are particularly ill-prepared to act as their own representatives because many "lack the most basic literacy skills . . . [and m]any . . . have learning disabilities and mental impairments." *Id.* at 621. In addition, although the Court recognized that states have a legitimate interest in reducing the workload of their judiciary, the Court found that appointing appellate counsel for indigent defendants would ultimately conserve judicial resources as the applications filed would be easier to comprehend. *Id.* at 623. The Court concluded

that defendants who plead *nolo contendere* or guilty have a constitutionally guaranteed right to appointed counsel for first-level appellate review, as *Douglas* required.

Should it have been "apparent to all reasonable jurists" based on "then-existing precedent," *Lambrix*, 520 U.S. at 527-28, in 2004 that first-tier indigent criminal appellants must have counsel appointed by the State to assist them? This Court believes that it should have been. *Douglas* held that in first appeals by right, States must appoint counsel to represent indigent defendants. *Douglas,* 372 U.S. at 357. *Ross* did not hold otherwise, but rather addressed the different circumstance of appeals to the State's highest court. *Ross*, 417 U.S. at 610-12. The main distinction between these two precedents is not the discretionary nature of the appeal in *Ross*, but rather the fact that a first-tier appeal necessarily plows new ground: trial court records must be gathered, errors must be identified, arguments must be framed, and research must be conducted afresh. A second, discretionary appeal rarely requires any of that. *Ross* is distinguishable from *Douglas* not because the appeal in that case was discretionary, but because it was a second appeal that did not focus on mere error correction. The features of an appeal by a defendant appealing a guilty plea to the Michigan Court of Appeals plainly do not touch any of the operative factors of *Ross*. Equally plain, therefore, is that the *Halbert* holding was compelled by the holding in *Douglas*.

A panel of the Sixth Circuit reached that same conclusion in *Simmons v. Kapture*, 474 F.3d 869 (6th Cir. 2007), although the panel opinion has been vacated and rehearing *en banc* granted. *Simmons v. Kapture*, No. 03-2609 (6th Cir. May 15, 2007). Nonetheless, the panel opinion does provide some guidance. *See DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1175-76 (9th Cir. 2005) (a vacated opinion may carry persuasive value); *In re Memorial Hosp. of Iowa County, Inc.*, 862 F.2d 1299, 1302 (7th Cir.1988) (vacated decisions have persuasive force; however, vacation

"clouds and diminishes the significance" of such decisions). In that opinion, the Court held that the decision in *Halbert* requiring the appointment of counsel for indigent defendants appealing a plea-based conviction was not a "new rule" under *Teague v. Lane*, and therefore applied retroactively to the petitioner's case. *Simmons*, 474 F.3d at 876-78. In fact, the panel majority insisted that the holding in *Halbert* was "virtually compelled by the analysis in both [*Douglas* and *Ross*], and cannot be said to represent a new rule." *Simmons*, 474 F.3d at 877. Rather, the court concluded, "the result in *Halbert* is really an application of the 'old rule' from *Douglas*." *Id.* at 876. This Court agrees.

The respondent points out that the *Halbert* opinion was not unanimous. When determining whether a Supreme Court case establishes a new rule of law, it is appropriate to consider the distribution of votes in the case purportedly establishing the new rule of law. *Beard v. Banks*, 542 U.S. 406, 415-16 (2004). However, "the mere existence of a dissent" does not establish that a rule is new. *Id.* at 416 n.5. The split decision in *Halbert* does not convince the Court that *Halbert* announced a new rule. Instead, the Court believes that reasonable jurists must view *Halbert* as the necessary and inevitable application of *Douglas* to Michigan's unique system of appointing appellate counsel to indigents on their first appeal to the State's intermediate appellate court of errors.

Even if a case announces a new rule, that case should be applied retroactively if its holding falls within one of two recognized exceptions to *Teague*'s general prescription of non-retroactivity of new rules to cases on collateral review. First, the new rule should be applied retroactively "if it places certain kinds of primary, private individual conduct beyond the power of criminal law-making authority to proscribe." *Teague*, 489 U.S. at 307 (internal quotation omitted). That exception plainly does not apply here. Second, the new rule will be applied retroactively on

collateral review "if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Id.* at 311 (internal quotation omitted). This exception is "reserved for watershed rules of criminal procedure . . . [that] properly alter our understanding of the *bedrock procedural elements*." *Ibid.* (internal quotation omitted).

Although the second *Teague* exception is a narrow one, there can be no question that an accused's right to counsel ranks high among those procedural rights that must be considered fundamental. The Supreme Court consistently has declared that "[a]n accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases 'are necessities, not luxuries.' Their presence is essential because they are the means through which the other rights of the person on trial are secured." *United States v. Cronic*, 466 U.S. 648, 653 (1984). In a case extending the holding of *Alabama v. Shelton*, 535 U.S. 654 (2002), to a federal habeas prisoner, the Eleventh Circuit observed:

> Overshadowing our consideration of whether *Shelton*'s extension of the right to counsel should be made retroactively applicable is one momentous fact: Every extension of the right to counsel from *Gideon* [*v. Wainwright*, 372 U.S. 335 (1963),] through *Argersinger* [*v. Hamlin*, 407 U.S. 25 (1972),] has been applied retroactively to collateral proceedings by the Supreme Court.

*Howard v. United States*, 374 F.3d 1068, 1077 (11th Cir. 2004). The Supreme Court held the right to counsel on appeal, recognized in *Douglas*, was retroactive to cases on collateral review in *McConnell v. Rhay*, 393 U.S. 2, 3 (1968). The right to counsel at plea hearings was held retroactive in *Arsenault v. Massachusetts*, 393 U.S. 5 (1968). And the right to counsel at probation revocation hearings was held retroactive in *McConnell* as well. *McConnell*, 393 U.S. at 3-4. After the Supreme Court held that an indigent criminal defendant had a right to counsel in *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Supreme Court repeatedly has used *Gideon* as a paradigmatic example of the

type of case fitting within the second *Teague* exception. *See Beard*, 542 U.S. at 417; *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997); *Gray v. Netherland*, 518 U.S. 152, 170 (1996); *Saffle v. Parks*, 494 U.S. 484, 495 (1990).

The rule in *Halbert*, like the other spawn of *Gideon* cited above, invokes a fundamental component of our criminal justice system. "[T]here can be no equal justice where the kind of an appeal a man enjoys depends on the amount of money he has." *Douglas*, 372 U.S. at 355 (internal quotation omitted). The ineluctable conclusion must be, therefore, that *Halbert* falls within *Teague*'s narrow second exception. Because the petitioner was denied his right to counsel in his first-tier appeal by the State, he is entitled to habeas corpus relief.

B.

The petitioner also raises the claim that the trial court incorrectly scored his offense variables and departed from the sentencing guidelines without complying with the departure requirements, which, of course, is the argument he wanted to make to the state appellate courts. That claim raises an issue of state law. As this Court explained in *Adams v. Burt*, 471 F. Supp. 2d 835 (E.D. Mich. 2007), a claim "that the trial court erred in scoring offense variables of the state sentencing guidelines is not cognizable on habeas review." *Id.* at 844. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Moreover, because of the disposition of this case, the petitioner may present this claim to the state appellate court.

III.

The Court finds that the state courts' decisions denying the petitioner counsel to assist with his request for leave to appeal his conviction and sentence resulting from a plea of guilt was an

objectively unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED**.

It is further **ORDERED** that the State of Michigan shall, within fifty-six days, either appoint counsel for the petitioner to prepare an application for leave to appeal and accept said appeal for filing within fifty-six days thereafter, or release the petitioner from its unlawful custody, in which case the petitioner's conviction shall be vacated.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 6, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 6, 2007.

s/Felicia M. Moses
FELICIA M. MOSES